**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000066**
**21-MAR-2025**
**10:26 AM**
**Dkt. 77 SO**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

**NO. CAAP-22-0000066**
MĀLAMA KAKANILUA, a domestic nonprofit corporation,
CLARE APANA and KANILOA KAMAUNU,
Plaintiffs-Appellants-Appellants, v.
BOARD OF LAND AND NATURAL RESOURCES; ADMINISTRATOR
OF THE STATE HISTORIC PRESERVATION DIVISION, Department
of Land and Natural Resources, State of Hawaiʻi,
Appellees-Appellees, and ARCHAEOLOGICAL
SERVICES HAWAII LLC, a foreign limited liability company,
Defendant-Appellee-Appellee
(CASE NO. 2CCV-21-0000060)

and

**NO. CAAP-22-0000067**
MĀLAMA KAKANILUA, a domestic nonprofit corporation,
CLARE APANA and KANILOA KAMAUNU,
Petitioners-Appellants-Appellants, v.
BOARD OF LAND AND NATURAL RESOURCES; ADMINISTRATOR
OF THE STATE HISTORIC PRESERVATION DIVISION, Department
of Land and Natural Resources, State of Hawaiʻi,
Appellees-Appellees, and ARCHAEOLOGICAL
SERVICES HAWAII LLC, a foreign limited liability company,
Respondent-Appellee-Appellee
(CASE NO. 2CCV-21-0000131)

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT

MARCH 21, 2025

HIRAOKA, PRESIDING JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

These appeals involve archaeological permits issued by the Department of Land and Natural Resources' State Historic Preservation Division (**SHPD**) to Archaeological Services Hawaii LLC (**ASH LLC**). Mālama Kakanilua, Clare **Apana**, and Kaniloa **Kamaunu** (collectively, **Mālama**) appeal from: **(1)** the January 31, 2022 Final Judgment for the Board of Land and Natural Resources (**BLNR**), the **Administrator** of SHPD, and ASH LLC in Judiciary Information Management System (**JIMS**) case no. 2CCV-21-0000060; and **(2)** the February 17, 2022 Final Judgment for BLNR, the Administrator, and ASH LLC in JIMS 2CCV-21-0000131. Both judgments were entered by the Circuit Court of the Second Circuit.[1] We hold: **(1)** in the contested case on ASH LLC's 2020 permit, BLNR erroneously placed the burden on Mālama to prove ASH LLC failed to comply with its permit conditions for calendar years 2015-2017; and **(2)** Mālama were entitled to a contested case on ASH LLC's 2021 permit because of BLNR's procedural error in the contested case for the 2020 permit. We vacate the Final Judgment in JIMS 2CCV-21-0000060 and the Final Judgment in JIMS 2CCV-21-0000131 and remand for entry of a judgment for Mālama and against BLNR, the Administrator, and ASH LLC in each case.[2]

_____

[1] The Honorable Blaine J. Kobayashi and the Honorable Kirstin M. Hamman presided.

[2] An archaeological permit is "valid only for the calendar year for which it is issued[.]" Hawaii Administrative Rules § 13-282-3(b) (eff. 2003). The permits at issue have expired, but the *capable of repetition, yet evading review* and *public interest* exceptions to the mootness doctrine apply. See

(continued...)

## I.  BACKGROUND

No archaeological firm may alter a historic property in the state of Hawaiʻi without a permit from the Department of Land and Natural Resources (**DLNR**).  Hawaii Administrative Rules (**HAR**) § 13-282-3(a) (eff. 2003).  "Historic property" means "any building, structure, object, district, area, or site, including heiau and underwater site, which is over fifty years old."  HAR § 13-282-2 (eff. 2003).

ASH LLC applied for an archaeological permit for the 2020 calendar year.  Mālama requested a contested case hearing.  BLNR granted the request and appointed a hearing officer.  The hearing officer conducted a seven-day public hearing and submitted proposed findings of fact and conclusions of law and a recommended decision to BLNR on November 30, 2020.  On January 16, 2021, Mālama submitted a copy of a March 21, 2018 letter from SHPD to ASH LLC about the status of 39 archaeological monitoring reports for calendar years 2015, 2016, and 2017.  Mālama's submission stated the letter had been requested from SHPD "over four months ago" but was "not provided until now."

BLNR heard oral argument on January 22, 2021.  On February 4, 2021, BLNR issued an order adopting the hearing officer's findings, conclusions, and recommended decision

---

[2]      (...continued)
Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 5-7, 193 P.3d 839, 843-45 (2008).

3

(**Contested Case Order**).[3] BLNR approved ASH LLC's permit application. Mālama appealed the Contested Case Order, creating JIMS 2CCV-21-0000060. On January 6, 2022, the circuit court entered findings of fact, conclusions of law, and a decision and order affirming the Contested Case Order.[4] Mālama filed this secondary appeal, creating CAAP-22-0000066.

Meanwhile, ASH LLC applied for a 2021 permit. Mālama requested a contested case hearing. The Administrator recommended that BLNR deny Mālama's request. BLNR considered ASH LLC's application and Mālama's request during a public meeting on April 9, 2021 (two months after the Contested Case Order for the 2020 permit was issued). After hearing testimony, BLNR denied Mālama's request and approved ASH LLC's application (**2021 Decision**). Mālama appealed, creating JIMS 2CCV-21-0000131. On February 8, 2022, the circuit court entered findings of fact, conclusions of law, and a decision and order affirming the 2021 Decision. Mālama filed this secondary appeal, creating CAAP-22-0000067.

We consolidated the appeals.

---

[3] BLNR made only typographical and other non-substantive changes to the hearing officer's findings of fact and conclusions of law.

[4] A circuit court reviewing an agency decision acts as an appellate court. It shouldn't make its own findings of fact; it decides whether the agency's findings of fact were clearly erroneous based on the evidence before the agency. Sierra Club v. Bd. of Land & Nat. Res., 154 Hawaiʻi 264, 284, 550 P.3d 230, 250 (App. 2024), cert. granted, No. SCWC-22-0000516, 2024 WL 3378462 (Haw. July 11, 2024).

## II. POINTS OF ERROR

Mālama state four points of error, which we reorder and paraphrase: **(1)** SHPD, not BLNR, should have conducted the contested case hearing on ASH LLC's application for the 2020 permit and decided Mālama's contested case hearing request for the 2021 permit; **(2)** BLNR exceeded its statutory authority and acted on unlawful procedure when it approved the 2020 permit; **(3)** Mālama were entitled to a contested case hearing on the 2021 permit application; and **(4)** BLNR erred by concluding ASH LLC had a principal investigator "on staff," by not requiring ASH LLC's principal investigator to answer questions about his employment, and by not allowing Mālama to conduct discovery of ASH LLC's principal investigator's work records.

## III. STANDARDS OF REVIEW

Our review of the circuit court's decisions are secondary appeals; we must determine whether the circuit court's decisions were right or wrong by applying the standards in Hawaii Revised Statutes (**HRS**) § 91-14(g) to BLNR's decisions based on the record before BLNR. Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).

HRS § 91-14(g) (2012 & Supp. 2021), titled "Judicial review of contested cases[,]" provides in relevant part:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

5

> (1)　In violation of constitutional or statutory provisions;
>
> (2)　In excess of the statutory authority or jurisdiction of the agency;
>
> (3)　Made upon unlawful procedure;
>
> (4)　Affected by other error of law;
>
> (5)　Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)　Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." Flores, 143 Hawaiʻi at 121, 424 P.3d at 476 (cleaned up).

Whether an agency followed proper procedures in its decision-making is a question of law, which we review de novo. Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 315, 167 P.3d 292, 308 (2007).

## IV. DISCUSSION

**A.　BLNR was authorized to conduct the contested case hearing and to decide Mālama's request for a contested case.**

Mālama contend that SHPD, not BLNR, was authorized to conduct the contested case hearing on the 2020 permit and decide Mālama's request for a contested case hearing on the 2021 permit application.  Mālama's contention is not correct.  SHPD is a division of DLNR.  HRS § 6E-3 (2009 & Supp. 2021).  HAR § 13-1-28

6

(eff. 2009) applies to all DLNR contested cases. It provides: "When required by law, the *board* shall hold a contested case hearing[.]" HAR § 13-1-28(a) (emphasis added). "Board" means BLNR. HAR § 13-1-2(a) (eff. 2009).

Mālama argue that a circuit court order in another case (the **2019 Order**) is the law of this case, and therefore SHPD must conduct a contested case hearing. The 2019 Order required a contested case hearing on ASH LLC's permit application for calendar year 2019. It is not the law of the case in this appeal involving permits for 2020 and 2021. See Ditto v. McCurdy, 98 Hawai'i 123, 128, 44 P.3d 274, 279 (2002) (stating that "the law of the case concept applies to single proceedings, and operates to foreclose re-examination of decided issues either on remand or on a subsequent appeal").

Mālama also argue we should give preclusive effect to the 2019 Order. Res judicata, or claim preclusion, "prohibits a party from relitigating a previously adjudicated cause of action." Pendleton v. Ass'n of Apartment Owners of Kahala Towers, 153 Hawai'i 126, 135, 527 P.3d 462, 471 (App. 2023). The party asserting claim preclusion must show that the claim decided in the previous suit is identical to the one presented in the action in question. Id. The 2019 Order did not decide that SHPD, rather than BLNR, must conduct the proceeding; that issue was not before the circuit court.

Collateral estoppel, or issue preclusion, "applies to a subsequent suit between the parties or their privies on a

7

<u>different</u> cause of action and prevents the parties or their privies from relitigating <u>any issue</u> that was actually litigated and finally decided in the earlier action." <u>Pendleton</u>, 153 Hawai'i at 135, 527 P.3d at 471. Whether BLNR or SHPD was to conduct the contested case hearing was neither litigated nor decided by the 2019 Order. Mālama's preclusion argument is not persuasive.

We hold that BLNR, not SHPD, was authorized by statute and administrative rule to decide the contested case on ASH LLC's application for its 2020 permit, and to decide Mālama's request for a contested case hearing on ASH LLC's application for its 2021 permit.

**B. BLNR's decision on the 2020 permit was made upon unlawful procedure inconsistent with BLNR's constitutional duty.**

Mālama contend BLNR exceeded its statutory authority and acted on unlawful procedure when it approved the 2020 permit. We held above that BLNR was authorized by statute and administrative rule to decide the contested case on ASH LLC's 2020 permit application. We review de novo whether BLNR followed the appropriate procedure in so doing. <u>Sierra Club</u>, 115 Hawai'i at 315, 167 P.3d at 308.

Mālama argue — and BLNR, the Administrator, and ASH LLC don't contest — that Mālama have a property interest in protecting iwi kupuna (native Hawaiian burials) under

8

article XII, section 7 of the Hawaiʻi Constitution.[5]  ASH LLC's activities under an archaeological permit could impact Mālama's constitutionally protected interest.  See Kaleikini v. Thielen, 124 Hawaiʻi 1, 26, 237 P.3d 1067, 1092 (2010) (recognizing that article XII, section 7 of the Hawaiʻi Constitution protects cultural and religious beliefs about protecting iwi kupuna); cf. Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 59-60, 283 P.3d 60, 66-67 (2012) (discussing Honolulu rail project draft programmatic agreement for handling iwi kupuna).  Article XII, section 7 "places an *affirmative duty* on the State and its agencies to preserve and protect traditional and customary native Hawaiian rights, and confers upon the State and its agencies 'the power to protect these rights and to prevent any interference with the exercise of these rights.'"  Ka Paʻakai O KaʻAina v. Land Use Comm'n, 94 Hawaiʻi 31, 45, 7 P.3d 1068, 1082 (2000) (emphasis added) (quoting Stand. Comm. Rep. No. 57, in 1 Proceedings of the Constitutional Convention of 1978, at 639 (1980)).

Mālama's opposition to ASH LLC's permit application alleged that "ASH fails to perform its archaeological services

---

[5]      Article XII, section 7 of the Hawaiʻi Constitution provides:

The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

"Ahupuaʻa" is a "[l]and division usually extending from the uplands to the sea[.]"  Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 9 (1986).

work in compliance with the conditions set forth in HAR [§] 13-282-3."  HAR § 13-282-3 provides, in relevant part:

> (f)   Each permit shall contain the following conditions:
>
> (1)   The permittee shall submit, within one month of the conclusion of any field work, a brief report on findings to consist of:
>
> > (A)   A map locating all sites studied, to be on a portion of the relevant United States Geological Survey standard 1:24,000 topographic map; and
> >
> > (B)   A table listing each site, its major architectural features, its probable function, and the nature of work at each site (mapping, description, surface collection, test excavation).
>
> (2)   The permittee shall submit a minimum of two copies of a report or paper on any archaeological work to the SHPD.
>
> (3)   The permittee shall ensure all personnel are capable of adequately conducting the necessary work to accomplish any scopes of work.
>
> (4)   The permittee shall comply with all applicable statutes, ordinances, rules and regulations of the federal, state and county governments[.]

BLNR found:

> 64.   [Mālama] also contend that ASH did not properly perform other types or scopes of archaeological work such as monitoring[] grubbing and grading work[,] and failed to properly manage and care for iwi kupuna that was discovered in the course of its work.  [Mālama] reported incidents at projects where ASH was involved at which alleged improper monitoring, insufficient monitors or absence of monitors at sites where grading, excavation or other earthwork was being performed.  [Mālama] also reported incidents relating to the care and handling of iwi kupuna where they assert that ASH personnel were improperly handling iwi kupuna.  ***The Hearing Officer finds from the record and evidence presented in this matter insufficient evidence to support or prove such claims and assertions by a preponderance of the evidence***.
>
> 65.   HAR [§ 13-282-3(f)] sets forth certain conditions attached to the issuance of archaeological permits. [Mālama] contend that ASH has failed to perform its archaeological services work in compliance with certain of those conditions set forth in HAR §[ ]13-282-3(f) such as the following:

(1) The permittee shall submit, within one month of the conclusion of any field work, a brief report on findings to consist of:

(A) A map locating all sites studied, to be on a portion of the relevant United States Geological Survey standard 1:24,000 topographic map; and

(B) A table listing each site, . . . its probable function, and the nature of work at each site (mapping, description, surface collection, test excavation).

(2) The permittee shall submit a minimum of two copies of a report or paper on any archeological work to SHPD.

. . . .

66. [Mālama] assert that ASH has not been timely in its submissions of reports to SHPD and that ASH has not filed reports as required by HAR [§ 13-282-3(f)]. . . .

67. The record presented in this case reflects that reports have been submitted to SHPD by ASH and ASH acknowledges that some reports have not been submitted or were submitted late. ***The record in this case does not present information sufficient to identify, distinguish or establish which kind of report(s) were submitted or which kind of report(s) have not been submitted.*** Reports required by HAR [§ 13-282-3(f)(1)] are required to be submitted "within one month of the conclusion of any field work" however, the record presented does not reflect whether field work has been concluded so that it can be determined whether and how many reports are due or overdue. The reports referenced in HAR [§ 13-282-3(f)(2)] do not have a specified timeframe for when reports pertaining to "any archeological work" is to be submitted. ***The record in this case does not present information sufficient to assess the materiality and significance of an asserted "late" report or the absence of a report.*** From the limited information presented on the status of submission or non-submission of reports, ***the Hearing Officer finds insufficient information to support a conclusion that there has been a material failure on the part of ASH to file reports in accordance with the requirements of HAR [§ 13-282-3(f)(1)] or HAR [§ 13-282-3(f)(2)].***

68. . . . The Hearing Officer finds from the record and evidence presented in this matter insufficient evidence ***to establish or prove [Mālama]'s claims*** and assertions that ASH failed to perform its archaeological services work in compliance with the conditions set forth in HAR §[ ]13-282-3(f).

(Emphasis added) (underscoring omitted).

11

After the hearing officer submitted his recommended decision but before BLNR heard oral argument, Mālama submitted a copy of SHPD's March 21, 2018 letter to Jeff Pantaleo, ASH LLC's then-principal investigator. SHPD's letter referred to ASH LLC's overdue response to SHPD's February 2, 2018 "request for information regarding the status of each SHPD-approved archaeological monitoring plan (AMP) prepared under your SHPD-issued archaeological permit for the period 2015-2017." Two spreadsheets were enclosed. One listed 37 "AMPs submitted under your permit during this period, for which SHPD has no record of receiving an archaeological monitoring report (AMR) for SHPD for review and acceptance." SHPD requested, for each of the 37 monitoring plans:

 (1) The status of the archaeological fieldwork, i.e. whether the project has not occurred, is currently ongoing, or monitoring has been completed w/date of completion; or

 (2) Whether the project moved forward without ASH conducting archaeological monitoring; and

 (3) If the project is finished, provide a submittal fee sheet documenting when the archaeological monitoring report was submitted to SHPD for review.

The other spreadsheet listed two of ASH LLC's draft monitoring reports for which SHPD had requested, but not received, revised drafts for review.

SHPD requested ASH LLC's response in 30 days. The record contains no response from ASH LLC. During the contested case hearing ASH LLC's owner Lisa Rotunno-Hazuka admitted that ASH LLC submitted four or five monitoring plans for projects in the Mauna Lani district but only one monitoring report in 2018,

and that in some projects, years have gone by without ASH LLC submitting required monitoring reports.  She admitted "it is our error in being behind."  But, she added, "we are not the only firm that has not turned in all monitoring reports."

The SHPD Administrator testified that "review of reports" is "the principal means" SHPD uses to check whether archaeologists are following the law.  He then said,

> the problem we have is that for the most part we are never -- we don't know when the work is completed.  So we know every year a number of projects which we never get reports on, we don't know whether that's because the report was never prepared or the project never moved forward, and we just -- we simply don't have the resources to follow up to make determinations on why we haven't received a monitoring report after we approved the monitoring plan.

When asked about consequences of not receiving reports, he replied:

> At the moment there's very little consequence.  As I said, we have very little capacity to tell whether a report is simply overdue or whether the underlying project that would have lead to the monitoring never occurred.

On this record we conclude the hearing officer — and thereby, BLNR — erred by placing the burden on Mālama to prove that ASH LLC did not comply with its HAR § 13-282-3(f) permit conditions.  See In re Kukui (Molokai), Inc., 116 Hawaiʻi 481, 509, 174 P.3d 320, 348 (2007) (holding that Commission on Water Resource Management's conclusion that "no evidence was presented" to show that rights of native Hawaiians would be adversely affected erroneously shifted the burden of proof to parties opposing permit).

BLNR has an affirmative duty to preserve and protect traditional and customary native Hawaiian rights, <u>Ka Paʻakai O KaʻAina</u>, 94 Hawaiʻi at 45, 7 P.3d at 1082, such as protecting iwi kupuna.  BLNR acknowledges that "if ASH violated the terms of its permit, the Board still retains the discretion to revoke it or not issue a new permit."  A permittee's failure to comply with the HAR § 13-282-3(f) conditions for previous permits may be good cause to deny another permit, depending on the circumstances.  The Administrator testified that "review of reports" is "the principal means" SHPD uses to see if archaeologists are following the law, but SHPD doesn't "have the resources" or has "very little capacity" to do its job.  After being made aware of SHPD's March 21, 2018 letter to ASH LLC questioning the status of 39 archaeological monitoring reports for 2015-2017, BLNR should have required ASH LLC to prove its compliance with HAR § 13-282-3(f) for *at least* those three permit years, or to show good cause for noncompliance.  Having not made that inquiry, BLNR breached its affirmative duty to preserve and protect traditional and customary native Hawaiian rights to protect iwi kupuna.  <u>Cf. Kauai Springs, Inc. v. Plan. Comm'n of Cnty. of Kauaʻi</u>, 133 Hawaiʻi 141, 173, 324 P.3d 951, 983 (2014) (holding that county planning commission "is duty-bound to place the burden on the applicant to justify the proposed water use in light of the [public] trust purposes").

ASH LLC argues that "[w]ithout evidence of which reports were overdue, or the effect of the overdue reports,

14

[BLNR] did not abuse its discretion by holding that there was insufficient evidence that ASH materially or significantly breached any permit conditions in a way which would justify denying them a permit." ASH LLC should have the evidence needed to prove it complied with permit conditions, or had good reasons for not complying. BLNR erroneously placed the burden on Mālama to show that ASH LLC's purported failures to comply "abridge or deny their traditional and customary . . . rights." In re Waiʻola O Molokaʻi, Inc., 103 Hawaiʻi 401, 442, 83 P.3d 664, 705 (2004). BLNR should have required that ASH LLC show good cause for its failures to comply with its permit conditions, and provide information sufficient for BLNR to make the minimum findings to ensure that Mālama's customary and traditional practices were protected to the extent feasible, before approving the application for another permit. The Contested Case Order was thus made upon unlawful procedure inconsistent with BLNR's duty under Haw. Const. art. XII, § 7. HRS § 91-14(g)(1), (3). The circuit court was wrong to affirm it.

> ### C. Mālama were entitled to a contested case hearing on the calendar year 2021 permit application.

Mālama contend they were entitled to a contested case hearing on ASH LLC's application for its 2021 permit. SHPD's submittal to BLNR on ASH LLC's permit application stated:

> We expect that [Mālama] will ask for a contested case as to the permit. Assuming (without agreeing) that [Mālama] have an interest entitled to due process protection, [they] are nevertheless not entitled to another contested case. Determination of what process is due requires examination

> and balancing of three factors: "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail." [Flores v. Bd. of Land & Nat. Res.], 143 Hawaiʻi 114, 126-27, 424 P.3d 469, 481-82 (2018). Under the circumstances presented here, due process does not require any additional procedures to safeguard [Mālama]'s interests. ***Most especially, petitioners have already received a complete contested case hearing as to ASH's 2020 request.***

(Emphasis added.)

Apana submitted written testimony supporting Mālama's request. Apana, Kamaunu, Noelani **Ahia** (a member of Mālama Kakanilua's board), and Cecily **Riley** spoke at BLNR's public meeting in support of the request. A BLNR member moved to accept the staff recommendation to deny the contested case hearing request. The member stated:

> Just briefly, the -- what we've heard mostly on this contested case request is that ***folks are dissatisfied with the result of the first contested case hearing***. They have a judicial appeal on that. So that gives them due process with respect to how the first contested case hearing was conducted. And I just -- it seems to me that the -- that the interests of people who are concerned about iwi which I greatly respect and are very important, are protected by the SHPD, the burial councils and all those legal means that exist to protect iwi that are not being -- are not dealt with by the question of having contested case hearings over the licensing of architectural -- archaeological firms.

BLNR members voted unanimously to deny Mālama's request for a contested case.

BLNR must hold a contested case hearing when required by law. HRS § 91-1 (Supp. 2021). A contested case is "required by law" when one is required by constitutional due process. Flores, 143 Hawaiʻi at 124, 424 P.3d at 479. Mālama argue they had a constitutional due process right to a contested case

16

hearing.  The supreme court has articulated a two-step analysis for determining whether a party has a constitutional due process right to a contested case:

> First, this court considers whether the particular interest which claimant seeks to protect by a hearing is "property" within the meaning of the due process clauses of the federal and state constitutions.  Second, if this court concludes that the interest is "property," this court analyzes what specific procedures are required to protect it.

Id. at 125, 424 P.3d at 480 (cleaned up).

As discussed above, Mālama have a constitutionally protected property interest in protecting iwi kupuna.  Once a party shows it has a constitutionally protected property interest, the second step involves a balancing test to determine whether a contested case is required to protect it.  The factors to be balanced are:

> (1)   the private interest which will be affected; [and]
>
> (2)   the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; [against]
>
> (3)   the governmental interest, including the burden that additional procedural safeguards would entail.

Flores, 143 Hawaiʻi at 126-27, 424 P.3d at 481-82 (reformatted).

Here, BLNR's Contested Case Order (on ASH LLC's application for its 2020 permit) was issued on February 4, 2021, just two months before BLNR's April 9, 2021 public meeting where Mālama's request for a contested case on ASH LLC's application for its 2021 permit was considered.  But these cases aren't like Flores, where the supreme court believed

17

> there is no risk of erroneous deprivation, because Flores
> has already been afforded a full opportunity to participate
> in a contested case hearing and express his views and
> concerns on the matter, and he has not persuaded us that the
> provision of an additional contested case hearing is
> necessary to adequately safeguard against erroneous
> deprivation in this case.

143 Hawai'i at 127, 424 P.3d at 482.

Here, the Contested Case Order was made upon unlawful procedure inconsistent with BLNR's affirmative duty under Haw. Const. art. XII, § 7. Preventing another erroneous deprivation of Mālama's constitutionally protected property interest outweighs the burden another contested case may place on BLNR. Mālama were entitled to a contested case hearing on the calendar year 2021 permit application under the circumstances presented here. The circuit court was wrong to affirm BLNR's denial of Mālama's request for a contested case hearing.

We need not decide Mālama's fourth point of error.

## V. CONCLUSION

In the contested case over ASH LLC's calendar year 2020 permit, BLNR erroneously shifted the burden to Mālama to prove that ASH LLC didn't comply with its HAR § 13-282-3(f) permit conditions for calendar years 2015-2017. That was not consistent with BLNR's affirmative duty to preserve and protect traditional and customary native Hawaiian rights to protect iwi kupuna under article XII, section 7 of the Hawai'i Constitution. Because of this, Mālama were entitled to a contested case on ASH LLC's calendar year 2021 permit application. We vacate the Final Judgment in JIMS 2CCV-21-0000060 and the Final Judgment in JIMS

2CCV-21-0000131.   We remand for entry of judgments for Mālama and against BLNR, the Administrator, and ASH LLC in both cases.   Both permits having expired, no remand to BLNR is necessary.

On the briefs:

Lance D. Collins,
Bianca Isaki,
for Appellants-Appellants
Mālama Kakanilua, Clare
Apana and Kaniloa Kamaunu.

Julie H. China,
Linda L.W. Chow,
Lauren K. Chun,
Deputy Attorneys General,
State of Hawaiʻi,
for Appellees-Appellees
Board of Land and
Natural Resources and
Administrator of the
State Historic Preservation
Division, Department of Land
and Natural Resources,
State of Hawaiʻi.

Paul L. Horikawa,
for Appellee-Appellee
Archaeological Services Hawaii LLC.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge